Mr. Eugene T. Petrone Executive Director State Board of Agriculture 6th Floor, State Services Building 1525 Sherman Street Denver, Colorado 80203
Mr. H. H. Arnold Secretary of the University and Board of Regents University of Colorado Boulder, Colorado 80309
Dear Mr. Petrone and Mr. Arnold:
In letters dated August 6, 1979 and September 7, 1979, each of you has requested an attorney general's opinion regarding footnote 85(c) to the General Assembly's 1979-80 Long Appropriations Bill, which provides for the department of higher education that:
 It is the intent of the General Assembly that no employee paid from the Instructional Support or Resident Instruction line items nor other administrator whose current salary exceeds $38,800 shall receive an increase in compensation. The only exceptions shall be at the school of Veterinary Medicine and the University of Colorado Medical Center.
QUESTION PRESENTED AND CONCLUSION
Specifically, you have inquired whether footnote 85(c) imposes a mandatory restriction upon the use of appropriations made to your respective boards and the institutions they govern, and, if so, whether the restriction imposed is unconstitutional or in violation of statutory authority.
 It is my opinion that footnote 85(c) is not a mandatory restriction upon the use of appropriations made to your respective boards and the institutions they govern. It is my further opinion that if footnote 85(c) were intended to be imposed as a mandatory restriction it would be unconstitutional.
ANALYSIS
I have reached this conclusion for several reasons. First, as a mandatory restriction 85(c) would violate article III of the Colorado Constitution, entitled "Distribution of Powers," which provides that:
 The powers of the government of this state are divided into three distinct departments, — the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.
"The legislative power is the authority to make laws and to appropriate state funds," but "the enforcement of statutes and administration thereunder are executive, not legislative functions." MacManus v. Love, 179 Colo. 218, 499 P.2d 609
(1973).
As the court has indicated in two cases involving the constitutionality of Long Bill footnotes, Anderson v.Lamm, 195 Colo. 437, 579 P.2d 620 (1978) and MacManusv. Love, supra, it is often difficult to determine whether a power being exercised is executive, legislative, or judicial in character. "The dividing lines between the respective powers are often in crepuscular zones, and, therefore, delineation thereof usually should be on a case-by-case basis."Anderson v. Lamm; MacManus v. Love,supra. The legislature properly may attach some conditions upon the expenditure of appropriated funds in the Long Bill, subject to constitutional limitations. MacManus v.Love, supra. However, the legislature may not "interfere with the executive's power to administer appropriated funds, which includes the making of specific staffing and resource allocation decisions." Anderson v.Lamm, supra. To do so would be a violation of the separation of powers doctrine.
The Colorado Supreme Court in Anderson v. Lamm upheld the Governor's veto of 1977-78 Long Bill footnotes similar in effect to 85(c), in part because the footnotes violated article III. For instance, one of these footnotes involved an attempt by the General Assembly to allocate the number of full-time county employees to be hired in certain job categories, and another involved an attempt to require prior Joint Budget Committee approval of certain rate increases for special residential child care facilities, thereby "attempting to undertake an executive function in deciding whether a rate increase is appropriate."
Similarly, the Denver District Court in MacManus v.Love, (Civil Action No. C-24520, filed Nov. 24, 1971) upheld vetoed footnotes in the 1971-72 Long Bill which attempted to control the salaries of the Council on Arts and Humanities staff contrary to the provisions of existing law, and to limit salary expenditures for some Department of Natural Resources personnel employed with the funds appropriated. These particular findings of the lower court were not appealed.
If interpreted as a mandatory rather than a permissive restriction, 85(c), therefore, would be an unconstitutional limitation on executive authority to administer appropriated funds in violation of the separation of powers doctrine embodied in article III.
Second, article V, section 32 of the Colorado Constitution provides that:
 The General Appropriation Bill shall embrace nothing but appropriations for the expense of the executive, legislative and judicial department of the state, state institutions, interest on the public debt and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject.
This section has been interpreted to mean that "in the general appropriation bill the general assembly may not include substantive legislation, nor may it amend or repeal a law."Anderson v. Lamm, supra; see alsoBurciaga v. Shea, 187 Colo. 78, 530 P.2d 508 (1974). As a mandatory restriction 85(c) in effect would repeal several statutes pertaining to your boards and institutions. With respect to the state board of agriculture, C.R.S. 1973, 23-30-106, provides that "the board shall direct the disposition of any moneys appropriated to the Colorado State University." C.R.S. 1973, 23-31-108, similarly states that:
 The state board of agriculture has the general control and supervision of the Colorado State University, the farm pertaining thereto, and lands which may be vested in the university by state or national legislation and of all appropriations made by the state for the support of the same. The board has plenary powers to adopt all such ordinances, by-laws, and regulations, not in conflict with the law, as they may deem necessary to secure the successful operation of the university and promote the designated objects.
(Emphasis supplied.)
More specifically, C.R.S. 1973, 23-30-105(2) states that the secretary and treasurer of the SBA shall receive such compensation as may be fixed by the board, and C.R.S. 1973,23-31-111, provides that the state board of agriculture shall fix the salaries of the president, professors, and other employees of CSU and prescribe their respective duties.
Similar statutes apply to the University of Southern Colorado and Ft. Lewis College. C.R.S. 1973, 23-55-106(3)(d) and 23-52-104(1)(d) provide that addition to other powers conferred, the state board of agriculture has the power to determine the compensation to be paid to the president, executive officers, faculty, and professional staff of U.S.C. and Ft. Lewis College, respectively.
The board of regents of the University of Colorado has similar statutory directives. C.R.S. 1973, 23-20-111, states that the board of regents has general supervision of the university and exclusive control and direction of all funds of and appropriations to the university. Section 23-20-112 further provides that:
 The board of regents shall enact laws for the government of the university; appoint the requisite number of professors, tutors, and all other officers; and determine the salaries of such officers and the amount to be paid for tuition in accordance with the level of appropriations set by the general assembly for the university. . . .
(Emphasis supplied.)
Footnote 85(c) cannot be interpreted as a "level of appropriation set by the General Assembly." Such an interpretation would completely negate the authority granted to the regents by the remainder of the statute.
Footnote 85(c), therefore, if not construed as a policy guideline only, would constitute an impermissible attempt to repeal these existing statutes, in violation of article V, section 32 of the Colorado Constitution.
Third, article VIII, section 5(2) of the Colorado Constitution provides that:
 The governing boards of the state institutions of higher education, whether established by this constitution or by law, shall have the general supervision of their respective institutions and the exclusive control and direction of all funds of and appropriations to their respective institutions, unless otherwise provided by law.
(Emphasis supplied.)
Footnote 85(c) cannot "otherwise provide by law," because it is not a substantive law. In Associated Students of theUniversity of Colorado v. Regents of the University ofColorado, 189 Colo. 482, 543 P.2d 59 (1975) the Colorado Supreme Court said expressly that the phrase "unless otherwise provided by law":
 operates so that any qualifications of the constitutional grant is to be construed as divesting the supervision and control granted only when a legislative enactment expressly so provides. Implied repeals are thereby intended to be guarded against.
(Emphasis supplied.)
If 85(c) were construed as such a "legislative enactment" it would be, once again, substantive legislation which the general assembly cannot include in the Long Bill.
SUMMARY
In summary, then, I interpret footnote 85(c) to the 1979-80 Long Bill as an expression of a suggested policy guideline which may be followed voluntarily. If footnote 85(c) were intended as a legislative mandate, however, it is unconstitutional under article III, article V, section 32, and article VIII, section 35 of the Colorado Constitution, because it would then violate the separation of powers by attempting to administer appropriations and would constitute impermissible substantive legislation in the General Appropriations Bill.
Finally, as you may be aware, the Governor did not choose to veto footnote 85(c) and indicated instead in his August 5, 1979 memo to department executive directors that all footnotes he did not veto "are to be followed as a matter of executive policy as if they were statute." This, too, is an expression of policy under these circumstances. Although it should be considered as indicative of the governor's position on 85(c), it is not a legislatively enacted law which can limit or repeal constitutional or statutory provisions. Additionally, the Governor's disapproval by veto is not necessary to invalidate unconstitutional Long Bill footnotes. SeeMacManus v. Love, (Civil Action No. C-245207, filed Nov. 24, 1971).
Please let me know if I can be of any further assistance.
Very truly yours,
 J.D. MacFARLANE Attorney General
APPROPRIATIONS EXECUTIVE BRANCH STATUTORY CONSTRUCTION
C.R.S. 1973, 23-31-108
C.R.S. 1973, 23-30-105
C.R.S. 1973, 23-31-111
C.R.S. 1973, 23-55-106 C.R.S. 1973, 23-52-104
C.R.S. 1973, 23-20-111
C.R.S. 1973, 23-20-112
Colo. Const. art. III
Colo. Const. art. V, § 32
Colo. Const. art. VIII, § 5
HIGHER EDUCATION, DEPT. OF Agriculture, St. Bd. of
Footnote in Long Bill purporting to limit salary increases for certain administrators cannot be construed as mandatory, but may be followed as a matter of policy.