James A. Stroup State Controller Division of Accounts and Control Department of Administration 1525 Sherman St., Room 206 Denver, CO 80203
Dear Mr. Stroup:
I am writing in response to your letter of August 11, 1982, which requests a legal opinion providing a definition of the term "custodial funds" as used by an agency which seeks spending authority for moneys received by an agency but which are not the subject of an appropriation. You state that such requests are often accompanied by a reference to the Colorado Supreme Court decision in MacManus v. Love, 179 Colo. 218, 499 P.2d 609
(1972).
QUESTION PRESENTED AND CONCLUSION
What is the definition of "custodial funds" received by an agency which may be expended by that agency even though no appropriation has been made by the legislature?
It is my opinion that "custodial funds" are those moneys which upon receipt can be identified as set aside for a specific purpose and are not generally available for state uses. This very broad definition is discussed at greater length below, however, application of the rule to a particular situation may require additional analysis by this office.
ANALYSIS
Art. X, § 12 of the Colorado Constitution provides that the state treasurer is responsible for public funds in his custody. A second constitutional provision requires that no moneys in the state treasury shall be disbursed "except upon appropriations made by law, or otherwise authorized by law. . . ." Colorado Constitution, art. V, § 33. By statute the General Assembly has required all employees and officers of the state who receive moneys "accruing to the state from any source whatsoever. . . ." to transmit those moneys to the state treasurer. C.R.S. 1973,24-36-103(1).
The Colorado courts have recognized that the state treasury contains moneys which may be disbursed without an appropriation. In the case of MacManus v. Love, 179 Colo. 218,499 P.2d 609 (1972) the Colorado Supreme Court ruled that federal contributions of money to the state are not subject to the appropriation power of the legislature because federal funds are not state moneys. The court further stated: "Custodial funds are not state moneys. Stong v. Industrial Commission,71 Colo. 133, 204 P. 892 (1922)." 179 Colo. at 222. TheMacManus case confirms that the appropriation power of the legislature does not extend to all moneys within the control of the state or its agencies. That case identifies two classes of moneys which are not subject to appropriation, federal funds and "custodial funds." The court did not, however, define further the second of these two categories.
The Stong decision cited in the MacManus case provides additional guidance in defining custodial funds. That case arose from a decision of the state treasurer to invest $200,000 of the state compensation insurance fund in an investment different from that chosen by the state industrial commission. The commission had statutory authority giving it full control of all investments of the compensation fund, but the treasurer argued that the state constitution (specifically art. X, § 12 and art. V, § 33) gave him full control over state moneys. The court concluded that the treasurer was in error, stating:
 Yet the constitution is not violated, because the fund in question is not the general property of the state and its custody is no part of the treasurer's constitutional duty but is conferred on him by statute only. The fund is not "creditable to the general revenue of the state" and is "designated for purposes other than such general revenue" and so is not in the treasury of the state. . . .
71 Colo. at 136.
The court also found it significant that the General Assembly could have designated someone other than the treasurer as custodian of the state compensation insurance fund, even though the legislature did not do so. The constitutional responsibilities of the treasurer relating to state moneys, were found not to apply to the compensation insurance fund.71 Colo. at 136.
The distinction between state moneys and other moneys in state custody was discussed further in Pensioners ProtectiveAssoc. v. Davis, 112 Colo. 535, 150 P.2d 974 (1944). In that case attorneys sought to recover their fees for a successful suit brought to recover moneys of the old age pension fund which had been transferred illegally. The attorneys sought to be paid from the recovered moneys, which were part of the old age pension fund. The court held that payment from that fund was proper because the old age pension fund was a trust fund, not subject to legislative appropriation. The court further stated as follows:
 The moneys involved are not public funds. They stand segregated for a special and designated use. The term "public funds" means funds belonging to the state. . . . The term does not apply to special funds, which are collected or voluntarily contributed, for the sole benefit of the contributors, and of which the state is merely the custodian. 50 C.J. 854 § 40.
112 Colo. at 540.
Courts in other states have also considered when moneys are "custodial funds." It has been said the even though funds are paid into the state treasury, the state is not necessarily vested with title; only moneys raised by the operation of some general law became public funds. Navajo Tribe v. Arizona Dept. ofAdministration, 111 Ariz. 279, 528 P.2d 623 (1974).
In a Washington case a question was raised as to the validity of expenditures of revenues of the Washington Toll Bridge Authority without specific appropriation. The court concluded that even though revenues of the Authority were held in the state treasury, the state constitution did not require them to be held by the treasurer and they were not state funds for which an appropriation was required. State ex rel. Washington TollBridge Authority v. Yelle, 195 Wn. 636, 82 P.2d 120
(1938). In reaching this decision the Washington court considered several aspects of the enabling legislation: 1) the bulk of the Authority's revenues were not taxes; 2) the funds deposited with the treasury were legislatively declared not to be state funds; 3) funds were to be segregated and 4) the funds could have been placed in the custody of someone other than the treasurer.
A Texas court has held that the Texas unemployment compensation fund was not a state fund subject to appropriation because it could be used only for the specified purpose for which it was created. Friedman v. American Surety Co. of N.Y., 137 Tex. 149,151 S.W.2d 570 (1941). In a decision analogous toStong, supra, the Texas court used the term "custodian" as a synonym for "trustee."
Although there is no litmus test to determine "custodial funds", some general principles can be extracted from the above cases, which include the following criteria to be considered in each specific case:
1. Whether the moneys are raised by some method other than those by which state revenues are normally raised,i.e., were they raised by some type of special assessment rather than taxes;
2. Whether the moneys are designated by law for a specific purpose and that purpose only, and therefore are not available for other state purposes, e.g., trust funds for which the state treasurer is the trustee;
3. Whether there are provisions of law which require the state treasurer to segregate those moneys from other moneys for which he is responsible;
4. Whether someone other than the state treasurer could have been made custodian of those moneys even if the treasurer has in fact been made responsible.
An example may be useful. The attorney general's enforcement duties include prosecution of consumer protection actions. C.R.S. 1973, 6-1-103 (Supp. 1981). In such actions the courts have broad authority to enter orders to rectify the results of deceptive trade practices. See C.R.S. 1973, 6-1-110(1) (Supp. 1981). If a court order were to require a defendant to pay moneys to the attorney general for use only in other consumer protection enforcement activities, such moneys would not be part of the general revenue of the state. They would be "custodial funds" because they were obtained pursuant to a court order which earmarked them for a specific purpose. Although there might not be a requirement that the funds be segregated from other state moneys, the effect of such an order is to make the treasurer a custodian of moneys that are not available for general state purposes.
SUMMARY
Although state agencies are generally required to turn over to the state treasurer all moneys they receive, not all such moneys are public funds of the state which must be appropriated. Federal funds are one such exception. "Custodial funds" are another. In general, "custodial funds" are those which upon receipt can be identified as set aside for a specific purpose and are not generally available for state uses. Moneys for which the treasurer is a trustee pursuant to specific legal authority fall within this category, but the trustee relationship is only one form of custody. Specific applications of this broad definition will require consideration of all the applicable circumstances of a particular instance and may require review by this office in borderline cases.
If I can provide additional assistance on this matter, please do not hesitate to contact me.
Very truly yours,
 J.D. MacFARLANE Attorney General
PUBLIC FUNDS APPROPRIATIONS TREASURER, STATE TRUST FUNDS
C.R.S. 1973, 24-36-103(1)
Colo. Const. art. V, § 33
Colo. Const. art. X, § 12
ADMINISTRATION, DEPT. OF Administration
Custodial funds which may be expended without an appropriation are those which upon receipt can be identified as set aside for a specific purpose and are not generally available for state uses and for which the state treasurer serves as custodian.